[Civ. No. 1309.   Third Appellate District.—December 31, 1914.]

## MERCANTILE TRUST COMPANY OF SAN FRANCISCO (a Corporation), Trustee Under the Last Will and Testament of Richard D. Chandler, Deceased, Respondent, v. CHARLES P. DOE, Appellant.

SALES—ACTION FOR BALANCE DUE—OPEN BOOK ACCOUNT—PLEADING—MOTION TO STRIKE OUT.—In an action to recover an alleged balance due upon the sale and delivery of certain coal, where the amended complaint distinctly claimed that the account was a continuing one and constituted an open account, but defendant claimed that each item constituted a separate and distinct transaction, that payment had been made in full, and pleaded the statute of limitations, plaintiff had the right to establish the fact by evidence as to whether or not the account was an open one and this right was not taken away from him by the circumstance that payments made long after all the coal was furnished corresponded exactly with the value of coal furnished in a given month, as such coincidence would not necessarily change the account from an open to a closed account, and if the account was an open one it was immaterial whether the payments were applied to the earliest item or not; and in such case it was not erorr for the court to refuse to strike out, on defendant's motion, averments in the amended complaint respecting the delivery of coal during the first two months of the account, upon the ground that the averment was sham, irrelevant, and redundant and that the complaint showed on its face that the amounts sued for had been paid.

ID.—PAYMENTS—APPLICATION OF.—In such a case, under section 1479 of the Civil Code, plaintiff had the right to apply the payments to the account generally, in the absence of a direction by the defendant,

at the time of payment, indicating an intention that they should be applied to the extinction of a particular obligation.

ID.—STRIKING BALANCE ON ACCOUNT—ACCOUNT STATED NOT SHOWN BY. In such a case, where it appears that defendant had been purchasing coal from plaintiff's testator for many years and the evidence showed that the account had been carried along on the books of the vendor sometimes for months, defendant paying from time to time, not always, an amount equaling deliveries for any given month or months, an averment in the amended complaint that on a certain date, when the parties had ceased to deal with each other, "The balance upon said open account was struck and the total sum due, owing and unpaid on account of said balance was the sum of $5,586.95, and said last named sum became due and payable on or about said last named date," cannot be construed to mean that the open book account was on said date changed to a stated account.

ID.—ACCOUNT STATED—ESSENTIALS OF—NEW CONTRACT.—An account stated requires that there be an agreement, expressed or implied, that the balance is correct and this agreement constitutes a new contract which takes the place of the original contract whether open or closed.

ID.—OPEN BOOK ACCOUNT—STATUTE OF LIMITATIONS.—In such a case the action being on an open book account and having been commenced within four years was not barred by the statute of limitations.

ID.—OPEN BOOK ACCOUNT DEFINED.—An open book account is one which is continuous or current, uninterrupted or unclosed by settlement or otherwise, consisting of a series of transactions; also one in which some item in the contract is left open and undetermined by the parties, in which sense it may exist whether there be but one item or many.

ID.—OPEN ACCOUNT—STATED ACCOUNT—DISTINCTION.—The distinction between an account stated and an open account is that to constitute the former there must be an agreement, expressed or implied, whereas the latter does not necessarily rise from the agreement of the parties; and in an action upon an open account it is not necessary for the plaintiff to prove an express agreement that the account should be treated as an open account.

ID.—RENDERING OF ACCOUNTS—ACCOUNT STATED NOT SHOWN BY.—The rendering of an account each month in such a case did not change the character of the items from an open book account to a stated account or account rendered, the evidence showing that the deliveries continued right along whether the monthly deliveries were paid for or not and there being evidence tending to show that the parties did not contemplate that their dealings were to be closed at the end of each month.

ID.—EVIDENCE—SALES AND DELIVERIES—RENDITION OF ACCOUNTS—LACK
OF VARIANCE.—In such a case, where the day-book of original en-
tries was introduced in evidence, in which were entered the sales and
deliveries showing several different deliveries each month, the weight
and price per ton and the amount due carried out, which was the
same as stated in the complaint, and evidence was given of the rendi-
tion of the items of account, these circumstances did not show that
the account became an account stated or that there was a variance
between the pleading and proof, and such evidence, while admissible
to show delivery and nonpayment, was not admissible to show an
account stated, as that purpose would have been outside the issues.

ID.—VARIANCE—WAIVER OF OBJECTION.—The rule generally is that where
a variance is claimed it should be claimed at the trial.

ID.—RENDERING OF ACCOUNTS—ACCOUNT STATED.—The rendering of an
account in such a case is only a circumstance which with others may
or may not establish an account stated.

ID.—EVIDENCE—TESTIMONY AS TO ACCOUNT BOOKS—COURSE OF BUSI-
NESS—OPEN ACCOUNT.—In such a case there was no error in admitting
the testimony of the vendor's bookkeeper as to the amount of balance
shown by his ledger to be due, the witness merely stating what ap-
peared from the day-book subsequently introduced; nor was there
any error in admitting the testimony of the witness as to the course
of business between the parties prior and up to the date of the first
deliveries included in the account sued for, such evidence being
admissible as tending to show the existence of an open account.

ID.—EVIDENCE—BOOKS OF ACCOUNT.—The books of account of the vendor
in such a case were admissible where a witness testified that the
entries made in the scale book were made by him and very soon there-
after and on the same day transferred to the day-book and were all
in his handwriting and the coal was either weighed by him or by
another witness; that the entries were checked up and compared with
the tags which had been given to the teamsters who reported back
that the coal had been delivered and returned the tags signed by
defendant to show delivery, which tags it was shown had been de-
stroyed.

ID.—DOCUMENTARY EVIDENCE—CONSIDERATION BY JURY—PRESUMPTION.
In such a case the contention that the pages of the day-book which
constituted the account were not read to or by the jury, and that
the reading was not admitted or waived and therefore could not be
considered in evidence, cannot be maintained, where the record shows
that they were offered and admitted in evidence over defendant's
objection, that they formed a part of the bill of exceptions stipulated
by defendant "as settled, allowed and certified as and for defendant's
bill of exceptions on its (his) motion for a new trial and on its (his)
appeal from the judgment herein." There being nothing in the record
to show that the jury did not consider this evidence it must be pre-
sumed on appeal that they did.

ID.—INSTRUCTIONS—OPEN BOOK ACCOUNT.—In such a case there was no error in giving the following instruction at the request of the plaintiff: "If you shall find that the various deliveries of coal to the steamer "Eureka," as charged upon the books of Richard D. Chandler, were entered upon the books as parts and items of running and continuous dealings between Richard D. Chandler and the defendant, and that the account was kept unclosed prior to the date of the last entry on March 28th, 1908, with the anticipation of further transactions on the part of Mr. Chandler and the defendant, then I instruct you that the book account which contains these charges is an open book account."

ID.—ENTRY OF ITEMS IN BOOK—CIRCUMSTANCES SHOWING OPEN BOOK ACCOUNT.—While it may be true that the mere entry of items in books does not constitute an open book account, such entries and an explanation as to how and when they were made may constitute a strong circumstance tending to show the true character of the account, and it is held in the present case that there were other circumstances pointing in the same direction and sufficient to show that the account was an open book account.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   J. E. Prewett, Judge presiding.

The facts are stated in the opinion of the court.

H. W. Glensor, for Appellant.

Morrison, Dunne & Brobeck, and Edward Hohfeld, for Respondent.

CHIPMAN, P. J.—The cause of action is stated in two counts, in the first of which it is alleged, in the amended complaint, that Richard D. Chandler, at the instance and request of defendant, sold to defendant and delivered to the steamer "Eureka," of which he was the managing owner, certain coal, to wit: between December 4, 1907, and December 30, 1907, 203 tons, at the agreed price of $1,423.20; between the dates of January 4, 1908, and January 29, 1908, 212 tons, at the agreed price of $1,490.40; between February 3, 1908, and February 28, 1908, 197 tons, at the agreed price of $1,381.20; and between March 4, 1908, and March 28, 1908, he sold and delivered to defendant 184 tons for which defendant agreed to pay the sum of $1,292.15.   It is alleged: "That the total sum so agreed to be paid by defendant on account of said coal

bargained, sold and delivered as aforesaid, is the sum of $5,586.95; that on or about the 28th day of March, 1908, said open book account was closed and a balance upon said open book account was struck and ascertained and the total sum due, owing and unpaid on account of said balance was the sum of $5,586.95 and said last named sum became due and payable on or about said last named date''; that defendant paid on account of said balance the sum of $1,423.20 on July 20, 1908, and the further sum of $1,490.40 on November 13, 1908, and there remains due and unpaid the sum of $2,673.35.

The second count differs from the first count principally in alleging that the coal was of the reasonable value of the amount as in the first count stated. It is further alleged: ''That on or about the 28th day of March, 1908, the balance upon said open book account was struck, and the total sum due, owing and unpaid on account of said balance was the sum of $5,586.95, and said last named sum became due and payable on or about said last named date.''

The amended complaint is verified and was filed February 16, 1913. A special demurrer to the amended complaint, alleging uncertainty and ambiguity and also pleading subdivision 1, section 339 of the Code of Civil Procedure, in bar of the action, was overruled. A motion to strike out certain parts of the amended complaint was denied and defendant answered, making specific denials to most of its averments; denied that the amounts therein claimed were carried on the books of account of said Chandler ''as an open book account, and defendant denies that said sum of $2,673.35 is and constitutes, or is, or constitutes the unpaid portion of a balance due on an open book account.'' As a separate defense, alleges: ''That for many years prior to the death of said Richard D. Chandler defendant purchased certain goods, wares and merchandise from said Chandler, to wit: coal; that each and every item of coal so purchased . . . was and constituted a separate and distinct transaction and that long prior to the commencement of this action this defendant paid, or caused to be paid, to said Chandler, the purchase price in full for all coal sold and delivered by said Chandler prior to his death.'' Defendant also pleaded that the action is barred by subdivision 1 of section 339 of the Code of Civil Procedure.

The cause was tried before a jury and plaintiff had a verdict for the amount prayed for. Defendant appeals from the

judgment and from the order denying his motion for a new trial.

It was admitted at the trial that if there is any claim against defendant plaintiff is the holder thereof.

Appellant's points are: That his motion to strike out should have been granted and his demurrer sustained; that the evidence does not sustain the verdict; that the judgment is excessive and that the court erred in giving certain instructions and in certain rulings on the admission of testimony.

The motion was to strike out the averments "respecting the delivery of coal alleged to have been made in December, 1907, and January, 1908, upon the ground that they were sham, irrelevant and redundant matter, and further that the said amended complaint showed upon its face that the amounts therein sued for had been in fact paid." The argument is that "no other inference can be drawn from the pleading than that these were each separate items"; that "the items became due as the coal was delivered," and, as "the payments corresponded to the exact amount of the two items it follows as matter of law discharged the oldest obligation in point of time." (Civ. Code, sec. 1479, par. 3, subd. 3.)

The sufficient answer to these contentions, it seems to us, is found in the amended complaint which distinctly claims that the account was a continuing one and constituted an open account, and whether or not this was true plaintiff had the right to establish the fact by the evidence and this right was not taken from him by the circumstance that payments made long after all the coal was furnished corresponded exactly with the value of coal furnished in a given month. Such coincidence would not necessarily change the account from an open to a closed account. If the account was an open one, as plaintiff alleged it was, it would be immaterial whether payments were applied to the earliest items or not. Plaintiff had the right to apply the payments to the account generally, under the section of the code cited, unless the defendant, at the time of payment, indicated an intention that it should be applied to the extinction of a particular obligation, and defendant makes no contention that he gave any such directions. The evidence was that he gave none. It was not error to deny the motion.

The demurrer is urged upon somewhat similar grounds. The contention is that "the complaint shows that the alleged

account had become an account stated and is barred by the statute of limitations." (Code Civ. Proc., sec. 339, subd. 1.) It is argued that the averment of the amended complaint that, on March 28, 1908, "the balance upon said open book account was struck and the total sum due, owing and unpaid on account of said balance was the sum of $5,586.95, and said last named sum became due and payable on or about said last named date," can only be taken "to mean that the account was stated by the parties on that date"; that the "account could not be *open* and *closed* at the same time." If the case were here on the special demurrer alone there might be some ground for invoking the rule that where there is doubt or uncertainty as to the meaning of the complaint it is construed most strongly against the pleader. But the case is here on this very issue alleged by plaintiff and denied by defendant and evidence was taken on that isssue. We do not think, however, that the amended complaint is open to the objection urged. A fair construction of the language used in stating what was done is entirely consistent with the account remaining an open book account on the day the balance was struck. The sufficiency of the complaint to state a cause of action on an open account is not challenged otherwise than as to its uncertainty.

It appears, from defendant's answer, that defendant had been purchasing coal from Chandler for many years and the evidence was that the account had been carried along on Chandler's books sometimes for months, defendant paying from time to time, not always, an amount equaling deliveries for any given month or months. When the averment referred to is given full consideration it means that the parties had ended their dealings with each other on March 28, 1908, and naturally a balance was struck, but it cannot fairly be said that in doing so what had been an open book account was by so doing changed to a stated account. Nor can we see how by any reasonable meaning given to the pleading that either count states a cause of action on an account stated. An account stated requires that there be an agreement, express or implied, that the balance is correct and this agreement constitutes a new contract which takes the place of the original contract whether open or closed. (1 Am. & Eng. Ency. of Law, p. 437.) The action was on an open book account and

was commenced within four years and was not barred by the statute of limitations.  (Code Civ. Proc., sec. 337, subd. 2.)

There was sufficient evidence, in our opinion, to justify the verdict that the quantity of coal of the value charged was delivered to defendant by Chandler at the times alleged and that no payment other than as alleged in the amended complaint has been made.  The only question about which there can exist any controversy is whether the account was, as alleged by plaintiff, an open book account, or whether, as defendant claimed in his answer, "each and every item of coal so purchased by defendant from said Chandler was and constituted a separate and distinct transaction," from which, as is contended, the inference necessarily followed (though it is not so alleged) that the account was a stated account and hence barred by the statute.

Defendant offered no evidence.  What we know of the transaction comes entirely from the testimony of persons in the employment of Chandler at the time and from entries in his books of account.  While defendant did not plead a stated account and alleged only that each item "constituted a separate and distinct transaction," it is perhaps immaterial whether from defendant's standpoint the account was stated or not if in fact it was shown to be something other than an open book account, upon which latter character of the account plaintiff relied for recovery.

There is no disagreement among the authorities as to what constitutes an open book account.  In Anderson's Law Dictionary an open account is thus briefly defined: "An account with one or more items unsettled; also, an account with dealings still continuing."  Among the cases cited is *Tucker* v. *Quimby*, 37 Iowa, 17, to the effect that—"An account to be 'continuous' must be without break or interruption.  'Open' means not closed; 'current,' running, passing, a connected series.  A 'continuous, open, current account,' is an account which is not interrupted or broken, not closed by settlement or otherwise; a running, connected series of transactions."

In 1 Ruling Case Law, page 207, it is said: "The expression 'outstanding and open account' has a well-defined and well-understood meaning.  In legal and commercial transactions it is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing, and subject to future settlement and ad-

justment. It is usually disclosed by the account books of the owner of the demand, and does not include express contracts or obligations which have been reduced to writing, such as bonds, bills of exchange, or promissory notes.''

In 1 Ency. of Law and Pleading, page 363, it is stated: ''An open account is one which is continuous or current, uninterrupted or unclosed by settlement or otherwise, consisting of a series of transactions; also one in which some item in the contract is left open and undetermined by the parties, in which sense it may exist whether there be but one item or many.''

It is stated, in 1 Am. & Eng. Ency. of Law, p. 435: ''An account is also open whenever there have been current dealings between the parties, which are kept unclosed with the expectation of further transactions between them.'' Appellant contends that an open account cannot exist without the mutual agreement of the parties that the account between them shall be so treated and that as there is no direct evidence that defendant ever so agreed there is no open account established. To constitute an account stated there must be an agreement, express or implied, between the parties as to the correctness of the items of the account and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance. (1 Am. & Eng. Ency. of Law, p. 437.) But, herein lies the chief distinguishing characteristic differentiating a stated account from an open, current account. An open account does not necessarily arise from the agreement of the parties. One definition is that ''an open account is an account not stated or agreed upon between the parties.'' (1 Am. & Eng. Ency. of Law, p. 435.) It was not necessary that plaintiff should prove an express agreement by defendant that the account should be treated as an open account. As stated in Ruling Case Law, page 207, ''it is usually disclosed by the account books of the owner of the demand''; and may be shown by the circumstances attending the dealings between the parties.

The evidence showed that the general course of business between the parties, which had been followed for a long time before December, 1907, and was continuous thereafter up to March 28, 1908, when coal was no longer delivered to the steamer ''Eureka,'' was that coal was furnished to defendant from time to time during each month on credit and indicat-

ing a continuous credit account on which defendant paid for previous deliveries more or less of the balance due from time to time. It is not reasonable to hold, as defendant contends should be held, that the account was a stated account because each separate delivery in this long series of sales constituted a separate transaction, there having been each month many separate sales and deliveries. As we have already suggested, the rendering of account each month did not change the character of the items from an open book account into a stated account or account rendered. The evidence was that the deliveries continued right along whether the monthly deliveries were paid for or not, and there was evidence tending to show that the parties did not contemplate that their dealings were to be closed at the end of each month. It appeared that no part of the claim now made was paid until in July, 1908, although the balance was struck in March. The method of deliveries was shown to have been as follows: The coal was run over the scales in delivery wagons; tags in duplicate of the weight were taken and given to the teamster who delivered one to defendant and returned the other to Chandler; the weights were entered in a scale book at the time the weights were taken and on the return of the tags they were checked up with the scale book; the weights and price were entered in the day book shortly after being entered in the scale book. These facts were testified to by the clerks who did the weighing and made the entries in the books of account and by the teamsters who delivered the coal to the steamer. The daybook of original entries was introduced in which were entered the sales and deliveries commencing December 7, 1907, and ending March 30, 1908. These entries show several different deliveries each month. In December, January, and February, for example, there were six and in March five. The weight is given in each instance and the price, seven dollars per ton, and the amount due carried out, being the same as stated in the complaint. Evidence was given of the rendition of the items of account and appellant contends that this circumstance shows the account became an account stated and that the variance is fatal. No objection was made to the evidence, when offered, on this latter ground. The evidence was offered by plaintiff as tending to show delivery and nonpayment and was admissible for that purpose though not admissible to show an account stated, because it would for that purpose

have been outside the issues.    The rule generally is that where a variance is claimed it should be claimed at the trial. (*Stover* v. *Stevens,* 21 Cal. App. 261, 263, [131 Pac. 332].) Furthermore, the rendering of the account is only a circumstance which with others may or may not establish an account stated.    We have already pointed out that, to turn an account into an account stated, it must have been rendered with a view of ascertaining the balance and making a final adjudication of the matter involved in the account; or, in other words, to bring about a meeting of the minds of the parties.    We think the evidence fairly established an open book account.

It is further contended that the verdict is excessive in the sum of $14.95.    This result is arrived at by taking the gross tons stated in the complaint and multiplying by seven dollars, the value per ton.    The day-book showed the exact tons and fractions of tons carried out at seven dollars per ton, as delivered to defendant, and amounted to the sum claimed in the complaint.    The value is fully shown, although in alleging the tons some fractions were omitted.    The evidence supported the verdict.

A witness, Chandler's bookkeeper, over defendant's objection, was permitted to state the amount of balance shown by Chandler's ledger to be due.    The witness stated merely what appeared from the day-book subsequently introduced.    This witness was also permitted to state the course of the business between the parties prior and up to December, 1907.    As tending to show the existence of an open account the evidence was admissible.    We think the books of account were properly admitted.    The testimony of witness Robert Chandler was that the entries made in the scale book were made by him and very soon thereafter and on the same day transferred to the day-book and were all in his handwriting, and the coal was either weighed by him or by witness Wright.    These entries were checked up and compared with the tags which had been given to the teamsters who reported back that the coal had been delivered, and returned the tags signed by defendant to show delivery.    These tags, it was shown, had been destroyed. Appellant cites *San Francisco Teaming Co.* v. *Gray,* 11 Cal. App. 314, [104 Pac. 999], in support of his objection.    In that case, said the court: ''The witness clearly showed that the facts were obtained first by the oral statements of the various teamsters, then transferred by him to a memorandum

or temporary paper and then afterward entered by him in a
work-book, which was the book offered and receeived in evi-
dence." Commenting upon the objection, the court said:
"The first entry or memorandum made by the witness on
paper was but the oral statement of the teamsters" and that
the evidence "was purely hearsay." Respondent takes issue
with some statements made in the opinion which need not con-
cern us. The facts in that case were so unlike the facts in the
present case that it furnishes no guide for us here. Defend-
ant urges that the pages of the day-book which constituted the
account "were not read to or by the jury, nor was the reading
admitted or waived. They, therefore, cannot be considered
in evidence." The record shows that these pages, as testified
to by Mr. Chandler, were offered and were admitted, over
defendant's objection. They form a part of the bill of ex-
ceptions stipulated by defendant as "settled, allowed and cer-
tified as and for defendant's bill of exceptions on its (his)
motion for a new trial and on its (his) appeal from the judg-
ment herein." There is nothing in the record to show that
the jury did not consider this evidence and we must presume
that they did.

The court gave the following instruction, at the request of
the plaintiff: "If you shall find that the various deliveries
of coal to the steamer "Eureka," as charged upon the books
of Richard D. Chandler, were entered upon the books as parts
and items of running and continuous dealings between
Richard D. Chandler and the defendant, and that the account
was kept unclosed prior to the date of the last entry on March
28, 1908, with the anticipation of further transactions on the
part of Mr. Chandler and the defendant, then 'I instruct you
that the book account which contains these charges is an open
book account."

At the request of the defendant the court gave the follow-
ing instruction: "You are instructed that the mere entry of
items in books does not constitute an open book account, but
there must be either an express agreement between the par-
ties to maintain an open book account or some acts from which
such an agreement may be reasonably inferred."

Of the first of these instructions it is claimed that it is
ambiguous and misleading inasmuch as "it may be inter-
preted to mean that if Chandler made the entries in the books

because *he* anticipated future business transactions with Mr. Doe, that act of itself made it an open book account.''

We think the instruction is a correct statement of the law. The contention was that an open book account could not be established without showing that defendant had agreed that the account should be so treated. We have already said that the nature of the account was not necessarily the subject of previous agreement but was to be determined from all the facts and circumstances which, in our opinion, were sufficient to show that the account was an open book account.

Of the second of these instructions it may be true ''that the *mere* entry of items in books does not constitute an open book account,'' but where we have these entries and an explanation as to how and when they were made, they may constitute a strong circumstance tending to show the true character of the account, and in the present case there were other circumstances pointing in the same direction and sufficient to show that the account was an open book account.

We discover no just ground for ordering a new trial. The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 1, 1915.