[Civ. No. 2788. First Appellate District, Division Two.—June 25, 1919.]

THE PEOPLE, Plaintiff, v. CALIFORNIA SAFE DEPOSIT AND TRUST COMPANY (a Corporation), et al., Defendants; GEORGE S. SMITH, Appellant; E. De LOS MAGEE, Receiver, etc., Respondent.

[1] STATUTE OF LIMITATIONS—INSOLVENCY OF PARTY—SECURING OF LEAVE TO SUE.—A person having a cause of action against a corporation which has been adjudged insolvent and of which a receiver has been appointed cannot postpone the running of the statute of limitations by delaying the securing of leave of court to file a suit based thereon.

[2] ID.—APPOINTMENT OF RECEIVER—RUNNING OF STATUTE.—The appointment of a receiver does not affect the running of the statute of limitations.

[3] ID.—WHEN DEFENSE OF LACHES AVAILABLE.—The defense of laches is available whenever a demand or other preliminary action is necessary on the part of the plaintiff and such action is not taken within the period of the statute of limitations.

[4] ID.—RECOVERY OF INSTALLMENTS FROM INSOLVENT CORPORATION— DELAY IN TAKING ACTION.—A right of action to recover install-

ments which became due from a banking corporation more than four years prior to the filing of a petition in intervention in a proceeding brought under the provisions of the Bank Act of March 24, 1903, as amended in 1905, for the purpose of obtaining the appointment of a receiver for the liquidation of the affairs of such corporation, is barred both by the statute of limitations and laches.

[5] LEASES—PROVISION FOR RENEWAL—TERMINATION BY INSOLVENCY—EFFECT UPON CONTRACT WITH THIRD PARTY.—Where a lease for a given term of years at a stated rental, in addition to providing for a renewal of the lease at the expiration of such term if desired by the lessee, or for an assignment to a certain third person, provides that the insolvency of the lessee shall terminate the lease, and such lease is cancelled by decree of court during the first term because of insolvency of the lessee, there is no lease in existence to be renewed or assigned at the time the second tenancy is to have begun; therefore, certain monthly payments agreed to be made to such third person during such second tenancy will never arise, and no right will ever vest in such third person to such monthly payments.

[6] BOOK ACCOUNTS—ACTION UPON WRITTEN CONTRACT.—An action to recover installments due under a written contract is not an action based upon a book account, even though the plaintiff may have kept a memorandum-book in which he charged the amounts accruing under the contract and credited therein the several payments made.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Crane & Crane and Leon A. Blum for Appellant.

De Laveaga & Magee for Respondent.

HAVEN, J.—The above-entitled proceeding was commenced on December 7, 1907, in the name of the people of the state of California, upon complaint of the bank commissioners of the state, under the provisions of the Bank Act of March 24, 1903, as amended in 1905, for the purpose of obtaining the appointment of a receiver for the liquidation of the affairs of the California Safe Deposit and Trust Company (hereinafter referred to as the bank). The re-

spondent, E. De Los Magee, is the present receiver in said proceeding. On July 28, 1917, by leave of court first had and obtained, the appellant, George S. Smith, filed his petition in intervention in said action, wherein he prayed for judgment in the sum of nineteen thousand dollars, with interest, alleged to be due to said appellant upon certain contracts executed by the bank prior to the commencement of this proceeding. The facts upon which said claim is based are briefly these:

On July 31, 1906, appellant, George S. Smith, was the lessee of certain premises on Fillmore Street, in San Francisco. The bank desired to secure a lease of said property, and entered into negotiations with the owner thereof for that purpose. As a result of such negotiations the lease between the owner of the property and the appellant was canceled, a new lease was executed by the owner to the bank, and an agreement was entered into between the bank and appellant, upon which latter agreement the rights sought to be enforced herein are based. Under such agreement the bank agreed to pay the appellant two thousand dollars in cash and two hundred dollars a month for a period of five years from July 31, 1906; and further agreed that, under certain conditions, it would continue said payments of two hundred dollars a month to appellant for a second period of five years from and after July 31, 1911. The amount demanded by appellant in his present petition in intervention covered the monthly payments for the period extending from March 31, 1909, to July 31, 1911, and also the entire payments for the second period of five years from August 1, 1911, to July 31, 1916. The lease between the owner and the bank contained a clause giving the former the option to terminate the lease upon the insolvency of the lessee. After the appointment of the receiver, the owner demanded the termination of the lease under said clause, which was refused by the receiver. Litigation followed, in which a decree was made canceling the lease. In accordance with such decree the premises were delivered by the receiver to the owner on March 1, 1909. In a former suit the appellant recovered from the receiver the monthly payments of two hundred dollars up to the time of such cancellation of the lease.

[1] One of the defenses pleaded by the respondent is that the cause of action set forth in appellant's petition in

intervention was barred by subdivision 1 of section 337 of the Code of Civil Procedure, and by the laches of said petitioner. The trial court found in favor of the respondent upon this defense. As the first period, during which monthly payments are claimed by appellant to have matured, terminated on July 31, 1911, it is manifest that the plea of the statute of limitations as to that cause of action was good, unless the running of the statute was suspended by reason of the receivership proceeding. Appellant contends that the statute did not run, for the reason that his present proceeding could have been maintained only by leave of court first had and obtained, and in support of that contention cites *Union Collection Company* v. *Soule,* 141 Cal. 99, [74 Pac. 549], which follows *Hoff* v. *Funkenstein,* 54 Cal. 233, 235. In both of these cases it is said: "The theory of our statute of limitations is, that a creditor has four years, (or other time, as the case may be) on any day of which he may, of his own volition, commence an action." The first case above cited was an action upon a promissory note against the maker, who had been adjudged insolvent under the provisions of the insolvency law of 1895 (Stats. 1895, p. 152). That act contained a provision to the effect that "no statute of limitations of this state shall run against a claim which in its nature is provable against the estate of the debtor." In the earlier case the action was also upon promissory notes against the maker, who had been adjudged bankrupt under the provisions of the United States bankruptcy law then in effect. The decision is based upon a section of such act prohibiting the maintenance of any suit by a creditor proving his claim in the bankruptcy proceeding. The act under which the present proceeding against the California Safe Deposit and Trust Company is pending contains no provision suspending the running of the statute of limitations or staying the commencement of an action. It is necessary, however, for a claimant to obtain permission of the court before filing an action or petition in intervention against the receiver. It is this necessity upon which appellant bases his claim that the suit upon the present demand could not have been brought by the appellant of his own volition, for the reason that permission to sue might not have been granted him.

It is well settled that where plaintiff's right of action depends upon some act to be performed by him preliminarily to commencing suit, he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act. This for the reason that he has it within his power at all times to do the act which fixes his right of action. (25 Cyc. 1198.) This rule applies to the preliminary necessity of obtaining permission of court to file a suit. The obtaining of such permission is no part of the plaintiff's cause of action, but simply a step in his remedy. "His cause of action (if any he has) accrues independent of and prior to the application for leave, and is the very basis upon which the application rests; and hence a statute of limitation commencing to run from the date when his cause of action accrues, commences to run from the same time that it would commence if no such leave were required; that is to say, in a case like this at bar, the statute commences to run from the time when the wrong complained of was done, and not from the time of obtaining leave to sue." (*Litchfield* v. *McDonald,* 35 Minn. 167, 168, [28 N. W. 191]. See, also, *Ganser* v. *Ganser,* 83 Minn. 199, [85 Am. St. Rep. 461, 86 N. W. 18].) In *Williams* v. *Bergin,* 116 Cal. 56, 60, [47 Pac. 877], this principle is applied to the failure of a plaintiff to demand an assessment and warrant from a superintendent of streets, upon the issuance of which his right of action upon a street assessment depended. In *County of San Luis Obispo* v. *Gage,* 139 Cal. 398, [73 Pac. 174], it is held that the running of the statute of limitations against the demand of a county against the state was not suspended by reason of the necessity under the law of the presentation of a claim by the county to the state board of examiners, which presentation was a necessary prerequisite to the maintenance of an action upon such demand.  [2] It is also the general rule that the appointment of a receiver does not affect the running of the statute of limitations. (High on Receivers, sec. 135; Alderson on Receivers, sec. 195; *White* v. *Meadowcroft,* 91 Ill. App. 293.)  [3] Furthermore, the defense of laches is available whenever a demand or other preliminary action is necessary on the part of the plaintiff and such action is not taken within the period of the statute of limitations. (*Harrigan* v. *Home Life Ins. Co.,* 128 Cal. 531, 548, [58 Pac.

180, 61 Pac. 99].)  **[4]**  Under the principles announced by the above authorities, the right of action of appellant' for the recovery of all installments which became due more than four years prior to the filing of his petition in intervention was barred both by the statute of limitations and by his own laches.

**[5]**  Part of the payments claimed to be due during the second five years matured, if at all, within the statutory limitation.  The facts with regard to this second period are these:  The agreement between the bank and appellant provided that the monthly payments should continue during the second period of five years, if the bank itself renewed the lease for that period.  This it did not do.  The agreement further provided, that, if the bank did not wish to renew the lease, its right to renew was to be assigned to appellant, and failure · by the bank to so assign would obligate the bank to make further payments; and also that the bank was obliged to notify the appellant thirty days prior to June 1, 1910, that it would either exercise its option or abandon its right thereto, and the failure to give such notice was to be deemed to be the exercise by the bank of its option to renew the lease.  The bank did not and could not exercise its option to renew the lease, nor assign the same to appellant, for the reason that, prior to the time when such option was to be exercised or such assignment to be made, the lease had been canceled by decree of court, based upon a provision of the lease itself, to the effect that the insolvency of the bank should terminate the tenancy.  There was, therefore, no lease in existence to be renewed or assigned at the time the second tenancy was to have begun.  The conditions under . which appellant was to be entitled to the monthly payments during the second tenancy never· arose, and no right ever vested in appellant to such payments.

**[6]**  Appellant further contends that his cause of action is based upon a book account, in which the last entry was made on July 7, 1917, and, therefore, his cause of action is not barred.  The alleged book account was a memorandum kept by appellant, in which he charged the amounts accruing under the contract and credited the several payments made, including that collected by him as the result of the judgment in the former suit above referred to.  Appellant's

alleged cause of action is based upon his contract and not upon this account. The writing is a mere memorandum of debts accruing from an entirely independent source. In *Mercantile Trust Co.* v. *Doe,* 26 Cal. App. 246, 253, [146 Pac. 692], a number of definitions of a book account, as applied to the statute of limitations, are given, among which is the following: "In 1 Ruling Case Law, page 207, it is said: 'The expression "outstanding and open account" has a well-defined and well-understood meaning. In legal and commercial transactions it is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing, and subject to future settlement and adjustment. It is usually disclosed by the account books of the owner of the demand, and does not include express contracts or obligations which have been reduced to writing, such as bonds, bills of exchange, or promissory notes.'" Under the facts of this case, the alleged book account is not such a one as fixes a new date for the running of the statute of limitations.

Respondent presents other reasons why the appellant's cause of action fails, the consideration of which is unnecessary in view of the conclusions above set forth.

The judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.