[L. A. No. 5242.   Department Two.—October 29, 1919.]

## UNION OIL COMPANY OF CALIFORNIA (a Corporation), Respondent, v. PURISSIMA HILLS OIL COMPANY (a Corporation), Appellant.

[1] ACTION FOR GOODS SOLD—COUNTERCLAIM FOR BREACH OF WARRANTY—STATUTE OF LIMITATIONS—PLEADING—GENERAL DEMURRER. In an action for goods sold and delivered, error in sustaining a general demurrer to defendant's counterclaim averring a breach of warranty upon the ground that the claim was barred by the statute of limitations, which bar should have been set up by a demurrer calling attention to the proper section of the code, was without injury where it was demonstrated at the trial that such defense was wholly frivolous and groundless.

[2] STATUTE OF LIMITATIONS—CORPORATION INDEBTEDNESS—LETTERS OF PRESIDENT—REMOVAL OF BAR.—An acknowledgment in writing of an indebtedness of a corporation sufficient to take the debt out of the bar of the statute of limitations is shown by letters of the president of the corporation promising payment, although signed by him personally and not as president of the corporation, where it is also shown that by the by-laws he was authorized in his discretion to proceed with the business of developing the land of the corporation, and the letters were written upon letter-heads upon which, in addition to the corporate name, was printed his own as president.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Fred H. Taft, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Manning, Thompson & Hoover and Jacob Goldberg for Appellant.

Glen E. Huntsberger for Respondent.

MELVIN, J.—Plaintiff sued on two counts: One for balance due for goods, wares, and merchandise sold at an agreed price; the other for the reasonable value of such goods. The judgment was in favor of plaintiff for the full amount demanded. Defendant appeals.

The goods sold and delivered by plaintiff's assignor consisted principally of casing necessary for the use of defendant in the creation of an oil well on its property. The merchan-

dise was delivered between the 31st of January and the 31st of August, 1911. Defendant paid one thousand five hundred dollars on account. The judgment prayed for and given was for a balance of $2,791.25. The complaint was filed July 8, 1916, more than four years after the last delivery of supplies to defendant, but it was alleged by the plaintiff and found by the court that within four years of the institution of the suit defendant acknowledged the indebtedness in writing and thereby promised and agreed to pay the amount due.

Defendant, by its answer, denied the indebtedness and alleged that the sum of one thousand five hundred dollars paid was the full and reasonable value of the goods, denying also that any certain price had been agreed upon. The answer also set up the bar of sections 337 and 339 of the Code of Civil Procedure; and by way of counterclaim averred breach of warranty in that the casing supplied was entirely unfit for the purpose for which plaintiff's assignor had warranted it. The damage caused by such breach of warranty was placed by the pleadings at five thousand dollars, but in this part of the answer defendant prayed for nothing more than that plaintiff take nothing by its suit.

Plaintiff's general demurrer to the part of the answer averring a counterclaim was sustained, admittedly upon the ground that such claim was barred by the statute of limitations.

At the trial defendant offered no proof regarding the reasonable value of the property purchased, the only issue being whether or not the statute of limitations operated in favor of the defendant. This issue was determined in favor of the plaintiff.

[1] Appellant insists that the judgment should be reversed because of error in sustaining plaintiff's general demurrer to defendant's counterclaim and error of the trial court in holding that plaintiff's claim was not barred. Undoubtedly, the bar of the statute of limitations should have been set up by a demurrer calling attention to the proper section of the code. (*Bliss* v. *Sneath,* 119 Cal. 526, [51 Pac. 848]; *California Safe Deposit & Trust Co.* v. *Sierra etc. Co.,* 158 Cal. 690, 698, [Ann. Cas. 1912A, 729, 112 Pac. 274]; *Murphy* v. *Stelling,* 8 Cal. App. 702, [97 Pac. 672].) But appellant was not injured by the ruling because at the trial it was demonstrated that the defense of breach of warranty was

wholly frivolous and groundless. The casing was delivered; was used in the oil well; and payments were made on the purchase price more than a year after the alleged warranty. In all of the correspondence between defendant's president and the plaintiff or its assignor (to which we shall presently refer) is found not one word of protest regarding the quality of the casing. There was absolutely nothing in defendant's pleading to the effect that defendant had ever demanded damage for any breach of any contract of warranty, or had sought rescission because of violation of any such agreement under section 1786 of the Civil Code. The defense of breach of warranty was so palpably a sham that the error in sustaining the demurrer to that part of the answer was harmless. (Const., art. VI, sec. 4½.)

The court found that payments on account were made by defendant within four years prior to the commencement of the action; that one Howard A. Broughton, president of defendant corporation during all but one year of the period between the purchase of the casing and the filing of plaintiff's complaint, and a director during all of that time, "represented the defendant company in all its negotiations with the Union Well Supply Co.," plaintiff's assignor, and that in a series of letters between the seller and the purchaser of the casing "the letters written by the said Howard A. Broughton acknowledged the aforesaid obligation of the said defendant company, and contained a promise to pay said obligation, and were signed by the said Howard A. Broughton, and sent to and received by the said Union Well Supply Co., and were written and received within four (4) years prior to the commencement of this action."

The findings are sustained by the proof and are sufficient to take the case properly out of the purview of Title II, Part II, of the Code of Civil Procedure.

It was proved without contradiction that payments of five hundred dollars each were made, respectively, on April 12, 1912, June 10, 1912, and September 19, 1912. These payments were credited to defendant on the account generally and were not applied to any particular items. Respondent insists that the account was an open book account and that the statute of limitations runs from the payment of the last sum of five hundred dollars which was made within four years of the filing of its complaint, citing in this behalf subdivision

2, section 337, of the Code of Civil Procedure, *Mercantile Trust Co. v. Doe,* 26 Cal. App. 246, [146 Pac. 692], *Barron v. Kennedy,* 17 Cal. 574, *Concannon v. Smith,* 134 Cal. 14, [66 Pac. 40], and *McCormick-Ormand Co. v. Nofziger Bros. Lumber Co.,* 10 Cal. App. 241, [101 Pac. 688]. It is unnecessary to determine whether the last payment alone would take the matter out of the statute of limitations because in addition to that very significant partial settlement of the debt, the defendant did in writing acknowledge the said obligation less than four years before the filing of the complaint. It is true that the letters of acknowledgment, written upon the stationery of defendant, were signed by Mr. Broughton personally. Appellant's principal contention is that he had no power to bind the corporation, but the court properly found to the contrary. By the by-laws the president was authorized *in his discretion* to proceed with the business of developing the land of the company. He was authorized to procure a drilling rig and all necessary appliances. True, he was to have, "subject to the advice of the directors," direction of the affairs of the corporation, yet their minutes fail to show any meeting of the directory between February 26, 1908, and January 1, 1913. He, and he alone, conducted all business with the assignor of plaintiff. He, and he only, replied to letters addressed to the corporation. It is apparent from all of these facts that defendant is bound by his acts as the managing officer of the corporation, which may not now, after so long acquiescence, repudiate his negotiations with plaintiff's assignor. (Code Civ. Proc., sec. 1962, subd. 3; *Nicholson v. Randall Banking Co.,* 130 Cal. 533, [62 Pac. 930]; *Chandler v. Hart,* 161 Cal. 405, [Ann. Cas. 1913B, 1094, 119 Pac. 516]; *Newton v. Johnston Organ & Piano Mfg. Co.,* 180 Cal. 185, [180 Pac. 7].)

In his letter to plaintiff of November 30, 1912, Mr. Broughton wrote: "My understanding is that I promised you some money by the first of the month. I did this with the assurance that I could safely make such a promise but have been grievously disappointed in receiving money that I had a right to depend upon." On December 9, 1912, he wrote a letter to plaintiff's representative containing, among other things, the following expressions:

"I promised you $500 by December 1st which I find I cannot pay and I am primarily interested in showing you that I did not make you the promise without justification. I am

generally pretty careful about making definite promises but in this instance I felt I was absolutely safe in doing so. . . . Several days before going down to see you I wrote to my brother, sending him the original letters which I had received from your credit department, and explaining to him the necessity of making you a substantial payment, and asked him to wire me whether he would be able to do so. On the 29th of October he wired me that he would send $2,000.00 in ten days and that I could make definite promises based upon this. I received this wire while in Los Angeles and consequently felt perfectly safe in making you the promise which I made you. . . . The stockholders have until the end of this month in which to pay the assessment. At the end of that time we intend to reorganize and get out among our stockholders and get a subscription for $10,000.00 worth of stock. Out of this we will pay you in full and pay Fairbanks-Morse a small balance we owe them, which will be our total indebtedness. We will not commence work again on the well until you are fully paid.

"With the assurance we have of getting oil there, I cannot see any reason why we shall not be able to raise the sum stated and I shall insist on raising that amount at least." On March 24, 1913, he wrote: "I wrote Mr. Berry fully sometime ago as to our plan. It is to raise $10,000.00 with which to complete our well out of which we will pay you our indebtedness before work is resumed.

"I have nearly $6,000.00 subscribed and am working on several lines which ought to bring in the balance before long. I had expected to have it subscribed before this time, but find it slower work than I anticipated.

"I am doing the very best I can and will work it out all right and your bill will be paid, but it takes hard work to enthuse people on the oil situation now." And on November 1, 1913, after setting forth a plan of getting the stockholders in Honolulu to co-operate with certain investors in financing the company he closed with the following paragraph:

"I am doing everything that I possibly can, and as I have stated before, this bill will be paid before we start work."

It is to be remembered that the communications of Mr. Broughton were written upon letter-heads upon which, in addition to the corporate name, was printed his own as

president; that he frequently used the pronoun "we" in reference to the indebtedness and the promise to pay it; that throughout the letters various references were made which were appropriate to the corporation; and that Mr. Broughton had very plenary powers in reference to binding the corporation in the very matter of this development. Under all the circumstances it would be sacrificing substance to form for us to hold that he could take the indebtedness out of the purview of the statute by subscribing the corporate name and adding "per Howard A. Broughton, President," yet could not do so by the subscription of his own signature alone. **[2]** We think that under the circumstances the letter-head was incorporated by reference in the communications and that the signature of the president appearing at the foot of each letter constitutes a sufficient promise to take the claim out of the bar of the statute of limitations.

All of the quotations from Mr. Broughton's letters, taken in connection with his undoubted authority to bind the defendant corporation, fully justify the findings of the court and the conclusion of law that an acknowledgment of the debt had been made as required by section 360 of the Code of Civil Procedure, and that such new promise to pay took the indebtedness out of the bar of the statute of limitations.

The judgment is affirmed.

Wilbur, J., and Lennon, J., concurred.