[Civ. No. 11318. Second Appellate District, Division One.—August 19, 1937.]

E. LEE, Respondent, v. LEE DeFOREST, Appellant.

Perry F. Backus for Appellant.

A. A. Rothberg for Respondent.

THE COURT.—From a summary judgment that was rendered against him under section 437c of the Code of Civil Procedure, which provides that when an answer is filed in an action to recover upon a debt or upon a liquidated demand, upon motion of the plaintiff, supported by affidavit, such answer may be stricken out and judgment may be entered in the discretion· of the court, unless the defendant shall show by affidavit "such facts as may be deemed by the judge hearing the motion sufficient to entitle him to defend", defendant has appealed to this court.

By the terms of a lease entered into between defendant and the plaintiff's assignor (hereinafter referred to as the lessor), the latter let to defendant an apartment in the city of New York for a term of three years from and after October 1, 1929, for a total rent of $15,000, payable in instalments of $416.67 in advance on the first day of each month. The amended complaint upon which the judgment is based contains the allegation that the rent which had accrued on March 1, 1930, and thereafter, was not paid; also, that there had accrued as additional rent (pursuant to an agreement therefor in the lease) during the year 1930, certain charges for electric current, maid service, laundry service, and window cleaning; that on or about August 30, 1930, "defendant

abandoned said premises and refused and neglected to pay any further rent under said lease''; that the lessor ''thereupon notified said defendant that it would not release him from said lease, and said defendant thereafter agreed that said . . . (lessor) . . . may, pursuant to the terms and conditions of said lease, take possession of the demised premises for the benefit of and as agent of said defendant, rent the premises for the best rent obtainable therefor, and hold said defendant liable for any deficiency . . . ''; that thereafter the lessor rented the premises at a lesser rental than that provided in the lease and credited the defendant therewith; that defendant paid certain sums on account of said obligation; that there is now due and owing from defendant $7,498.44, with interest from September 30, 1932. By a second cause of action, plaintiff alleged that defendant was indebted to its assignor upon an ''open book account'' for said sum.

In the affidavit filed by him in opposition to plaintiff's motion for summary judgment, defendant failed to set forth facts to substantiate the assertions contained in his answer either of an ''eviction'' from the premises, or of an alleged agreement with the lessor whereby defendant's liability under the lease was terminated upon his surrender of the premises. He did not state therein that plaintiff's assignor agreed to release him from his liability, but alleged that ''this defendant requested a cancellation of the said lease and requested the right to deliver up possession for the reason that this defendant's housekeeper had changed all of the locks on said premises covered by the lease and excluded this defendant therefrom . . . plaintiff's assignor agreed to take possession of said premises on or about the 1st day of September, 1930, . . . ''. Defendant also denied that he promised to pay any rent after September 1, 1930, and denied that he requested the lessor to relet the premises for his benefit. These denials are meaningless, for, as hereinafter appears, upon surrender of the premises, the lessor legally had the right to and did relet for defendant's benefit. Moreover, by his affidavit, defendant admitted that he had written a letter to the lessor's agent, a copy of which was set forth in plaintiff's affidavit, and which was in part as follows:

''I have not been able to occupy my apartment since last March. I expect to move shortly to California and I wish therefore that you would proceed immediately to take over

my apartment through dispossess proceedings, if necessary, and do your best to re-lease it either furnished or unfurnished, as you see fit. . . . This action on your part will help to reduce my indebtedness to you and I will appreciate it very much. ''

The alleged "eviction" of defendant by his "housekeeper" placed the lessor under no obligation to restore him to possession. It is elementary that an "eviction" as a defense or cause of action of a tenant against a landlord must be shown to have been by the act of the landlord or through his procurement, or by paramount title. (16 R. C. L. 684 et seq.; 16 Cal. Jur. 679.)

Defendant also contended that the statement of the amount due from him was incorrect, asserting that he had "cancelled checks for $1941.12". An examination of the account annexed to the affidavit of plaintiff's assignor shows that defendant was given credit for the payments represented by said checks.

It is clear that, as far as these attempted defenses were concerned, the conclusion that defendant had failed to set forth facts "sufficient to entitle him to defend" was justified; and in the absence of any other defense, the order of the trial court striking the answer and entering judgment for plaintiff would have been correct. The instant action, however, was commenced on June 11, 1936, and at all stages of the proceeding defendant pleaded the bar of the statute of limitations (sec. 337, Code Civ. Proc.) as to all of the claim except that portion thereof which represented the default in payment of rent for the months of July, August and September, 1932. In this connection, appellant states in his brief "It is admitted by the defendant that if plaintiff could recover at all it should be for $1240.01 and interest from July 1st, 1932, on $416.67; on the same amount from August 1st, 1932, and a like amount from September 1st, 1932, to the date of filing said complaint. The defendant is willing to allow judgment to be rendered for that amount.'' In making this statement, appellant has overlooked, presumably through inadvertence, the fact that he is entitled to a credit of $750 for the proceeds of the reletting of the premises for the months of July, August and September, 1932.

It appears from appellant's brief that he relies upon the proposition that a cause of action accrued each month

during the term of the lease for the deficiency in rent which resulted from the reletting for that month, and that an action therefor, commenced more than four years after such accrual, is barred by the provisions of section 337 of the Code of Civil Procedure. As to this point, respondent seeks to sustain the judgment by reference to the authorities which hold that a landlord's action for damages, after the tenant's repudiation of the lease and abandonment of the premises (which will be the difference between what he may be able to rent the premises for and the price agreed to be paid under the lease), may not be brought prior to the expiration of the term of the original lease, at which time the damages for the first time can be ascertained. (*Treff* v. *Gulko,* 214 Cal. 591, 592 [7 Pac. (2d) 697]; *Bradbury* v. *Higginson,* 162 Cal. 602 [123 Pac. 797]; *Hermitage Co.* v. *Levine,* 248 N. Y. 333 [162 N. E. 97, 59 A. L. R. 1015].) The difficulty with upholding respondent's contention in the present case, however, is that the lease here sued upon, a copy of which was attached to the amended complaint, contains the following provision:

"In the event of re-entry or of termination of this lease by summary proceedings or otherwise, whether or not the premises be re-let, the tenant shall remain liable until the time when this lease would have expired, but for such termination, for the equivalent of the amount of all of the rent reserved herein, less the avails of re-letting, if any, and the same shall be due and payable by the tenant to the landlord on the several rent days above specified, that is, upon each of such rent days the tenant shall pay to the landlord the amount of the deficiency then existing."

In *Hermitage Co.* v. *Levine, supra,* it was said:

"No doubt a damage clause can be drawn in such a way as to make a tenant responsible for monthly deficits after the re-entry of his landlord, and this without charging the landlord with a duty to account for a surplus in other seasons. Such a clause will be found in *McCready* v. *Lindenborn,* 172 N. Y. 400 [65 N. E. 208], where the lease was to the effect that the tenant would pay the difference in rent 'in equal monthly payments as the amount of such difference shall from time to time be ascertained'. A clause similar in effect, though more uncertain in its terms, will be found in *Mann* v. *Ferdinand Munch Brewery,* 225 N. Y. 189 [121 N. E. 746], where the tenant was to 'continue liable for the

payment of the rent and the performance of all of the other conditions herein contained'.''

In the case of *Phillips–Hollman* v. *Peerless Stages*, 210 Cal. 253 [291 Pac. 178], in part, it was said:

''Ordinarily the reletting of the premises amounts to an election to terminate the lease and to hold the tenant for damages, and in such case, as we have seen under the authorities, *supra,* the action cannot be successfully maintained until the termination of the original term. The lease, however, may be so drawn as to contain provisions by which the application of that rule may be evaded.''

In the same opinion, after discussing the case of *Hermitage Co.* v. *Levine, supra,* and the authorities therein referred to, the court said:

''In *Kottler* v. *New York Bargain House, Inc.,* 242 N. Y. 28 [150 N. E. 591], . . . the covenant which was held to take the case out of the general rule above set forth was to the effect that 'if the said premises . . . become vacant during the said term, the landlord or his representatives may re-enter the same . . . and re-let the said premises as the agents of the said tenants, and receive the rent thereof; applying the same, first to the payment of such expenses as they may be put to in re-entering, and then to the payment of the rent due by these presents; the balance, if any, to be paid over to the tenants, who shall remain liable for any deficiency'. It was held that the liability for rent continued after the taking of possession and reletting by the landlord, under this covenant, and that an action could be maintained for such accrued deficiency before the end of the term. In the lease under consideration several clauses are found which indicate the foregoing intent very much more strongly than the phrase used in the Brewery case, *supra,* or the covenant in the Kottler case, *supra*; in fact, it would appear that the parties to the present lease had the rule illustrated by the Loydon (*Oliver* v. *Loydon,* 163 Cal. 124 [124 Pac. 731]), Bradbury and Hermitage cases in mind, and so drew the lease as to evade the application of the principle set forth in the earlier cases above cited.''

The court then quoted from the lease provisions to the effect that should the lessees abandon the premises and the lessor take possession, ''notwithstanding the same the said lessees shall not be released from liability for the full rental

herein called for"; that the lessor may relet and the lessees shall be liable "for the balance of the full term hereof, for the difference between the said rental procured by said lessor and the rental herein called for"; that default in payment of rent shall, at the option of the lessor, "work a termination of this lease to the same extent and with all the legal incidents as if the term hereof had expired by efflux of time". The court then continued:

"These clauses clearly show an intent that, at the option of the lessor, he could keep the liability of the tenant to pay rent alive (as distinguished from the liability to pay damages) even though the landlord had taken possession of the premises and relet the same. . . . The test applied in each of these cases is whether the parties show by their language that they intended, even though the tenant abandons the premises and the landlord relets them, to keep the liability to pay *rent* alive, as distinguished from the ordinary liability to pay damages. If such an intent appears the landlord may sue for the difference between the reletting price and the original lease price as each installment accrues, even though the entire lease period has not expired."

So in the instant case, the action is upon the defendant's liability to pay rent. The plaintiff alleges the lessor's refusal to release defendant from the lease and defendant's agreement that the lessor might, "pursuant to the terms and conditions of said lease", take possession of the premises and relet the same for his benefit. The affidavit of the lessor's agent, filed in support of the motion for judgment, states: "That at no time was there an agreement . . . whereby the defendant was to be released from the further payment of rental under said lease. . . . He agreed that said premises be rerented for his benefit in accordance with the terms and conditions of said lease. . . . "

Respondent contends that a distinction should be made by reason of the fact that the parties agreed upon a sum which represented the total rent for the term, the provision for monthly payments being for the convenience of the lessee. However that may be, the provision that the tenant shall pay the deficiency after reletting "on the several rent days above specified" obviously is for the convenience of the lessor and plainly was inserted to avoid the effect of the very rule of law which respondent seeks to have applied.

Nor can it be argued that the lessor had the option to sue for the deficiencies as they accumulated, or to wait until the end of the term and sue for damages, since the allegations of the complaint and the affidavit in support of the motion for judgment plainly show that the entry and reletting were pursuant to the provision of the lease hereinbefore quoted. "When the parties by their contract provide for the consequences of a breach, lay down a rule to admeasure the damages, and agree when they are to be paid, the remedy thus provided must be exclusively followed." (*McCready* v. *Lindenborn, supra.*)

█ Since we hold that by plaintiff's own showing upon his motion for summary judgment, his action was barred except as to the claim for the deficiencies in rent which accrued within four years prior to the commencement of the action, it becomes necessary to determine whether or not the judgment may be supported under plaintiff's second cause of action, which contained, in substance, merely the bare allegation that defendant was indebted to plaintiff's assignor upon "an open book account, for rent". It appears that the lessor kept a ledger record of the charges against defendant for rent (and after the surrender of the premises, of the credits due defendant for the "avails of reletting"). Also included in such record were charges for "maid service", "electricity", "laundry", and "window cleaning". The date of the last entry of the latter items is September, 1930. It is clear that these "service charges", considered as a separate book account, are barred; but respondent's position appears to be that these items properly formed the basis of a book account; that by the terms of the lease they were to be payable as "additional rent"; that these items and all other charges against the lessee were entered in one account, the last entry therein being a charge for rent and a credit for the proceeds of reletting for the month of September, 1932; and that the period of limitations should be computed from the date of said last entry.

We think that plaintiff's attempt to recover by alleging an open book account when his right of action is based upon the terms of an express contract, ought not to be allowed. It may be noted, in this connection, that the second cause of action was not included in plaintiff's first complaint, but was added by amendment after defendant had set up the

defense of the statute of limitations. ▪ As to instalment contracts generally, the weight of authority is to the effect that an action to recover any unpaid instalment must be brought within the period of limitations after the particular instalment becomes payable under the contract. (82 A. L. R. 316; *Bissell* v. *Forbes*, 1 Cal. App. 606 [82 Pac. 698]; *People* v. *California Safe Deposit & Trust Co.*, 41 Cal. App. 727 [183 Pac. 289]; *Vatcher* v. *Grier*, 50 Cal. App. 39 [195 Pac. 75]; *Mason* v. *New York*, 28 Hun (N. Y.), 115.) It also has been held that the provisions of an express contract, and not the entries in an account kept by plaintiff, control the running of the statute. In *Connor Livestock Co.* v. *Fisher*, 32 Ariz. 80 [255 Pac. 996, 57 A. L. R. 196], the plaintiff, who had sued to recover unpaid rent under three oral leases, sought to avoid the effect of the statute of limitations which had been set up by the defendant by including his claim for rent in an "open account" for money theretofore advanced. The Arizona Civil Code provided that "actions upon stated or open accounts other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant" shall be barred within three years after the incurrence of the last item of indebtedness therein entered. It was there said, in part:

"An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account. . . . Were the only basis of plaintiff's action the rent due on the three oral leases, we do not think it could be successfully contended that it constituted an 'open account'. The amount of rent due and the time of payment under the leases was fixed, and the fact that the tenant was at times behind in his rent, or that the leases might be terminated at any time on notice, do not, we think, effect the character of the contracts. We have been cited to no authority holding a contract of this nature creates an open account. Appellee refers to two Vermont cases, but in that state there is a special statute allowing an action of what is called 'book account', and the Vermont cases . . . hold . . . that under some particular circumstances rent may be recovered in the statutory action.

"It will be urged by plaintiff, however, that the other two classes of items bring the whole matter within the definition of an open account. It may be that there are circumstances

under which an item not ordinarily included in an open account may be placed there in the ordinary course of business, but we think this case is not one of that nature. It savors to us rather of an attempt to avoid the statute of limitations by, as an afterthought, arbitrarily including matters not properly or originally considered by either party as an open account, under that head, in order to avoid the statute. We do not think the items of rent constitute either an open account or any part thereof, and the plea of the statute of limitations was therefore available to defendant as against all such items due and payable before January 15, 1922.''

In the case of *Stewart* v. *Claudius,* 19 Cal. App. (2d) 349 [65 Pac. (2d) 933], it was held that in an action to recover instalments due under a written contract, ''the provisions of the contract are controlling as to the running of the statute; and even though the plaintiff keeps a memorandum book in which he charges the accounts accruing under the contract and credits therein the several payments made, the entries in the book account do not fix a new date for the running of the statute''. And in *People* v. *California Safe Deposit & Trust Co.* (*People* v. *Magee*), *supra,* in holding that a right of action for the payment of money in instalments pursuant to the terms of a contract was barred, the court declared:

''Appellant further contends that his cause of action is based upon a book account, in which the last entry was made on July 7, 1917, and, therefore, his cause of action is not barred. The alleged book account was a memorandum kept by appellant, in which he charged the amounts accruing under the contract and credited the several payments made, including that collected by him as the result of the judgment in the former suit above referred to. Appellant's alleged cause of action is based upon his contract and not upon this account. The writing is a mere memorandum of debts accruing from an entirely independent source. In *Mercantile Trust Co.* v. *Doe,* 26 Cal. App. 246 [146 Pac. 692], a number of definitions of a book account, as applied to the statute of limitations, are given, among which is the following: 'In 1 Ruling Case Law, page 207, it is said: ''The expression 'outstanding and open account' has a well-defined and well-understood meaning. In legal and commercial transactions it is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open

transactions, not reduced to writing, and subject to future settlement and adjustment. It is usually disclosed by the account books of the owner of the demand, and does not include express contracts or obligations which have been reduced to writing, such as bonds, bills of exchange, or promissory notes.'' ' Under the facts of this case, the alleged book account is not such a one as fixes a new date for the running of the statute of limitations.''

It may be observed that the facts shown by plaintiff in support of his motion did not include any agreement or understanding between the parties that the determination of defendant's liability under the lease was to be kept open until the end of the term. To the contrary, as has been noted, it was alleged that the surrender and reentry were pursuant to the terms of the lease, which provided that the tenant should pay the deficiency in rent for each month as it accrued. In our opinion, the showing made by plaintiff was insufficient to support a judgment upon his second cause of action.

■ Since no sufficient defense was made to that portion of plaintiff's claim which represented the deficiency in rent for the months of July, August and September, 1932, the provisions of the last paragraph of section 437c of the Code of Civil Procedure are applicable. That paragraph is as follows: ''If it appear that such defense applies only to a part of the plaintiff's claim, or that any part is admitted, the court shall, by order, so declare, and plaintiff's claim shall be deemed established as to so much thereof as such defense shall not apply to, or as is admitted, and the cause of action may be severed accordingly, and the action may proceed as to the remainder of such claim. No judgment shall be entered prior to the termination of such action but the judgment in such action shall, in addition to any matters determined in such action, award to plaintiff the amount of his claim so established by the proceedings herein provided for.''

The judgment is reversed and the cause remanded, with directions to the court below to proceed pursuant to the provisions of section 437c of the Code of Civil Procedure and in conformity with the views herein expressed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 16, 1937.