**MENICK v. CARSON et al.**

No. 12786.

United States District Court,
S. D. California, Central Division.

March 22, 1951.

---

Samuel A. Miller and Richard A. Lavine, Los Angeles, Cal., for plaintiff.

Stanley M. Arndt, Los Angeles, Cal., for defendant, C. C. Bronson.

Ray S. Carson, Pro. se.

BYRNE, District Judge.

This action was commenced pursuant to Section 70, sub. e of the Act of Congress relating to bankruptcy, 11 U.S.C.A. § 110, sub. e, by the plaintiff, Menick, as Trustee for the Estate of Lawrence M. Griffin, do‹ing business as Griffin Lumber Co., a bank‹rupt.

Defendant Bronson moved under Rule 12(e), Fed.Rules Civ.Proc. 28 U.S.C.A. to dismiss the action on the ground that the complaint fails to state a claim against the defendants upon which relief can be granted; or, in the alternative, for an order under Rule 12(e) requiring a more definite statement of the plaintiff's claim.

The plaintiff asserts a claim which is alleged to have arisen under the law of the State of California, being based on Section 3019 of the California Civil Code. The critical portions of that section are as follows:

"No assignment of an account shall be valid as against present or future creditors of the assignor without notice of such assignment * * * 3.

"Unless there shall be on file in the office of the filing officer, at the time of the execution of such assignment, * * * a presently effective and uncanceled notice signed by the assignor and the assignee, * * *."

Plaintiff alleges that during the period beginning June 20, 1948 and ending on February 14, 1949, the bankrupt transferred, sold and assigned to defendant Carson a grand total of $59,261.49 in open book accounts, as defined by Civil Code, § 3017(1). It is alleged that prior to and during this period the bankrupt obtained merchandise on credit from creditors in an amount totaling $67,725.98, and that none of the creditors who extended credit between June 20, 1948 and February 14, 1949 had actual or constructive notice of the assignments, and that these claims are provable in bankruptcy.

It is further alleged that there was not, during this period, nor at any time, on file in the office of the filing officer any presently effective or uncanceled notice of assignment signed by the bankrupt and by the defendant. Finally, it is alleged that between June 20, 1948 and the date of adjudication in bankruptcy, (October 5, 1949), the defendants collected the entire amount due on the accounts assigned to Carson by the bankrupt.

If the accounts were still in existence, uncollected, the problem would be simple. In the plain meaning of the statute there was an assignment which the Code states was invalid as against these creditors in whose shoes this plaintiff stands.

There can be no question but that these assignments, if still in existence and unrecorded, could be set aside by a creditor without notice or by his successor, the trustee. But since the assignments and before the bankruptcy of the assignor, the assignee has collected all these accounts in full. There is thus presented this question: *Does Section 3019 Extend to the Proceeds of the Assignments, and If So Is There Any Limitation on "Future Creditors" Who May Assert the Claim of Invalidity?*

Research discloses no case in which the California courts have considered this point. This court must determine whether the statute has the meaning attributed to it by the plaintiff, that contended for by the defendant, or a third construction. We believe that the proper construction to be applied is contrary to the contentions of both the plaintiff and the defendant.

The plaintiff's memorandum of points and authorities opens with these words:

"Plaintiff is not limited in his cause of action, as claimed by Defendant, C. C. Bronson, merely to a right to set aside assignments of accounts receivable that are outstanding or unpaid. Plaintiff has a right to collect and recover from the assignee of such accounts receivable for any accounts which have already been collected, and to obtain a personal judgment against the assignee for the proceeds collected.

"A. As a matter of fact and logic it should make no difference whether or not an assignee still has the unpaid account in his possession, or possesses the funds derived from the payment of such account. Since the assignment was void, the account and/or the funds realized therefrom must be returned to plaintiff, the trustee in bankruptcy, and the assignee must account for such funds."

and concludes: "C. Civil Code Section 3019, in clear language, gives to existing or future creditors the right to set such assignments aside, hence it is immaterial whether any credit was given by credi-

tors while any of the accounts assigned were unpaid or outstanding * * *."

If the Legislature intended this section to apply to "proceeds" and "it is immaterial whether any credit was given by creditors while any of the accounts assigned were unpaid or outstanding", then the assignee is perpetually in danger of creditors proceeding against him. There is no time limit. Years could elapse and then creditors who became such long after the accounts were fully collected could assert this right. To state the harsh result is to answer the question. It would be unreasonable to attribute such an intent to the Legislature.

■ On the other hand if, as the defendant claims, the plaintiff is limited merely to a right to set aside assignments of accounts that are outstanding or unpaid, the very purpose of the statute would be defeated. That purpose is to prevent secret liens and transfers which deceive a creditor who extends or continues credit on the basis of the debtor's financial position. If the debtor secretly assigns his accounts and a creditor extends credit in reliance on the possession of the debtor of the accounts, the creditor has been deluded and may set aside the assignments. To say that the assignee may avoid this result by merely collecting the accounts is to present him with a device which would practically make the statute a nullity.

■ We think the proper construction of this statute is to make its protection available to all existing or "present" creditors, i. e. those creditors who extend credit prior to the assignment of the accounts, and only to those "future creditors" who extend credit after the assignment, but before recordation or collection of the accounts by the assignee.

The creditor who extends credit *after the accounts have been collected* has not been deceived, because proper investigation will disclose that there are no accounts. The creditor who extends credit subsequent to the unrecorded assignments, but prior to the extinction of the accounts through collection, may set aside the assignments and if the accounts are collected subsequent to the accrual of his right he may resort to the proceeds.

Whether the accounts or the proceeds are recovered, the assignee's position is the same. He becomes a creditor of the debtor and if the debtor is bankrupt he becomes a creditor of the bankrupt estate provided he complies with the requirements of 11 U.S. C.A. § 93, sub. n.

Such a construction preserves the purpose of the statute without distorting it into a weapon in the hands of creditors who have in no way been prejudiced by the assignment. Also, it brings Section 3019 into complete harmony with Civil Code, §§ 2957 and 3440, and is consistent with the manifest policy of the law with regard to secret liens. The California Supreme Court in Ruggles v. Cannedy, 127 Cal. 290, 53 P. 911, 913, 59 P. 827, 46 L.R.A. 371, in commenting on Sections 2957 and 3440, said: " * * * The very object of them all—the reason for their being—is to prevent secret liens upon and interests in personal property. Says Chancellor Kent (2 Kent, Comm. *523: 'The policy of the law will not permit the owner of personal property to create an interest in another, either by mortgage or absolute sale, and still continue to be the visible owner. The law will not stop to inquire whether there was actual fraud or not, for it is against sound policy to suffer the vendor to remain in possession. * * *. It necessarily creates a secret incumbrance as to personal property, when to the world the vendor or mortgagor appears to be the owner, and he gains credit as such, and is enabled to practice deceit upon mankind.' In Palmer v. Howard, 72 Cal. 293, 13 P. 858, it is said: 'It must be remembered, in general, that the policy of the law is against upholding secret liens and charges to the injury of innocent purchasers or incumbrancers for value, and, in particular, that mortgages of personal property are permitted only in certain specified cases, and this only upon the observance of certain formalities designed to secure good faith, and to give notice to the world of the character of the transaction.' "

■ Section 3019 is but one more link in a chain fashioned by the Legislature for the protection of creditors against the evils of secret liens and the secret disposal

of assets to the detriment of those who presumably relied on the existence of these assets when they extended credit. In Bank of America Nat. Trust & Savings Ass'n v. Sampsell, 9 Cir., 114 F.2d 211, the court noted that the California courts have construed Section 2957 in pari materia with Section 3440. Since Section 3019 deals with the same general subject and has the same purpose, it should be construed in pari materia with Sections 2957 and 3440.

Section 3440 is aimed at protecting creditors against the secret disposal of personal property. For obvious reasons it expressly excepts choses in action which would include the type of accounts with which Section 3019 is concerned. In enacting Section 3019 to protect creditors from secret disposal of certain kinds of accounts, the Legislature seemingly chose this method because Section 3440, by its very nature, could apply only to tangible personalty. Section 3440 provides, in part, that "Every transfer of personal property, other than a thing in action, * * * is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, * * * to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, * * * and the successors * * *."

The section protects those creditors who have extended credit presumably on the faith of the debtor's apparent assets and this protection is not defeated by any subsequent change of possession. Watson v. Rodgers, 53 Cal. 401; Edgerton v. Scammon, 119 Cal.App. 273, 6 P.2d 295; Swift v. Higgins, 9 Cir., 72 F.2d 791; 12 Cal.Jur. 1008. But the section is not applicable to one who becomes a creditor after the property is delivered, not withstanding the fact that the transfer was fraudulent as to one who was a creditor while the debtor remained in possession. This is because one who extends credit after the property is delivered by the debtor could not possibly have done so on the basis of those assets since they were no longer the apparent property of the debtor.

Section 2957 contemplates recordation of a mortgage of personalty and such a mortgage is void as to one who becomes a creditor between the date of execution and the time of recordation. Ruggles v. Cannedy, supra. Such a mortgage is also void as to creditors who extend credit prior to the execution of the mortgage. Noyes v. Bank of Italy, 206 Cal. 266, 274 P. 68; Bank of America Nat. Trust & Savings Ass'n v. Sampsell, 9 Cir., 114 F.2d 211. Also in accord is Judge Yankwich's opinion in Re Mercury Engineering, Inc., D.C., 68 F. Supp. 376. But such a mortgage is valid against any creditor whose claim arises after recordation. Ruggles v. Cannady, supra.

Thus we see that the California courts and the Federal courts applying California law have given Sections 2957 and 3440 a harmonious application in order to effectuate the single policy which underlies both. We are satisfied that Section 3019 is in paria materia with both of those sections, and must be given a similar construction.

With these principles in mind, we may now proceed to examine the allegations of the complaint.

In paragraph VIII of the complaint the plaintiff alleges the existence of two groups of creditors. He alleges that there are persons who advanced credit to the bankrupt in the period between June 20, 1948 and February 14, 1949, none of whom had any actual or constructive notice of the assignments of the accounts by the bankrupt to the defendant. But plaintiff fails to allege that these persons extended credit prior to the collection of the accounts by the assignee. This is a fatal omission. Plaintiff also alleges that there are persons who advanced credit to the bankrupt prior to the assignments in question and that the bankrupt remained indebted to these persons at the time of bankruptcy. But plaintiff fails to allege that these persons were "without notice of such assignment(s)" as is required by Section 3019. Thus the plaintiff has failed to state a claim against the defendant upon which relief may be granted. Therefore the mo-

tion to dismiss should be granted but with leave to amend.

If plaintiff wishes to amend he should bear in mind Rule 10(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. That rule requires that "Each claim founded upon a separate transaction or occurrence * * * shall be stated in a separate count * * * whenever a separation facilitates the clear presentation of the matters set forth." Plaintiff has alleged that the bankrupt transferred, sold and assigned to defendant Carson a total of forty (40) accounts, and that this was evidenced by twenty-eight (28) Certificates of Indebtedness representing assignments in writing. If these Certificates of Indebtedness represented separate transactions, then each transaction should be attacked separately for purposes of clarity.

The motion to dismiss is granted.

The plaintiff is allowed 15 days to file an amended complaint if he cares to do so.