John **COSTELLO,** as Trustee of the Estate of **William Jason Evans,** bankrupt, Plaintiff,

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION,** a national banking association, Defendant.

**No. 31390.**

United States District Court
N. D. California, S. D.
April 12, 1956.

Shapro & Rothschild, San Francisco, Cal., for plaintiff.

Samuel B. Stewart, George Chadwick, Jr., H. H. Bechtel, San Francisco, Cal., for defendant.

GOODMAN, District Judge.

This is an action pursuant to Section 70, sub. e of the Bankruptcy Act, 11 U.S. C.A. § 110, sub. e by the Trustee of the estate of a bankrupt William Jason Evans, doing business as Evans Construction Company. The Trustee seeks to recover from the defendant Bank of America $20,300 collected by the Bank as assignee of the payments to become due the Evans Construction Company under a contract with the State of California for the construction of a bridge. The assignment to the Bank was made on September 15, 1948, to secure loans to be made by the Bank to Evans Construction Company to enable it to complete the bridge. As payments were received by the Bank pursuant to the assignment, it applied them to the loans made to the Construction Company until all of the loans were repaid on April 7, 1949. Nearly a year later, on February 27, 1950, Evans filed the voluntary petition on which he was adjudged a bankrupt.

Section 70, sub. e of the Bankruptcy Act provides in part that "A transfer made * * * by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor." The Trustee contends that the assignment made by the bankrupt to the Bank of America is voidable under Section 3019 of the California Civil Code by creditors having provable claims in

the bankruptcy proceedings. Section 3019, as it read at the time of the assignment in 1948, provided that unless recorded in the manner specified therein, "No assignment of an account shall be valid as against present or future creditors of the assignor without notice of such assignment or as against a subsequent purchaser or assignee of such account without notice of such assignment". It is conceded that the assignment here was never recorded.

Since all of the issues tendered by this cause turn upon the interpretation of California Civil Code, § 3019, as it read in 1948, in conjunction with related Code Sections 3017, 3018, and 3020–3029, a preliminary consideration of the history and purpose of these statutory provisions is appropriate. All of these Code Sections were enacted in 1943 to aid the flourishing business of non-notification financing of accounts receivable. When accounts receivable are financed on a non-notification basis, the accounts are assigned as collateral for a loan upon the mutual understanding between the assignor and the assignee that the account-debtor will not be notified of the assignment. Generally, the assignor, himself, is entrusted with the collection of the account on behalf of the assignee.

Prior to 1943, lending agencies financing receivables on a non-notification basis in California had to rely on the integrity of the assignor, since California was one of the minority of jurisdictions following the rule of Dearle v. Hall[1] that notification to the account-debtor is necessary to perfect an assignment against a subsequent assignee for value without notice.[2] But, these lenders did not have to rely on the continued solvency of the assignor since notification of the account-debtor was not necessary

to perfect the assignment against the assignor's creditors.[3]

But, in 1943, the United States Supreme Court in Corn Exchange Nat. Bank & Trust Co., Philadelphia, v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, interpreted Section 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, in a manner which made the security value of an account assigned on a non-notification basis dependent upon the continued solvency of the assignor. The effect of the Supreme Court's decision was that any assignment was voidable as a preferential transfer in the event of the assignor's subsequent bankruptcy unless it had been perfected both against his creditors and against subsequent assignees more than four months prior to bankruptcy or unless it had been perfected against both his creditors and subsequent assignees at the time it was made and was made for a contemporaneous consideration. Since assignments could never be perfected against subsequent assignees in California without notifying the account-debtor, this decision made accounts assigned on a non-notification basis worthless as security in the event of the subsequent insolvency and bankruptcy of the assignor.

The California legislature immediately came to the aid of non-notification financing by enacting Civil Code Sections 3017–3029, substituting recording of the assignment for notification to the account-debtor as the means of perfecting the assignment against subsequent assignees.[4] It is thus apparent that these Code Sections were prompted by the desire of the legislature to enable lenders engaged in non-notification financing to eliminate the risk that assignments taken as security might later be

1. 3 Russ. 1, 48, 38 Eng.Rep. 475 (1828).

2. Graham Paper Co. v. Pembroke, 1899, 124 Cal. 117, 56 P. 627, 44 L.R.A. 632; City of Los Angeles v. Knapp, 1936, 7 Cal.2d 168, 171, 60 P.2d 127, 129.

3. Walling v. Miller, 1860, 15 Cal. 38; McIntyre v. Hauser, 1900, 131 Cal. 11, 63 P. 69.

4. Stats.1943, p. 2542. Various amendments have since been made. Stats.1945, p. 756 amended Sections 3017–3022 and 3024. Stats.1947, p. 2479 amended Section 3022. Stats.1951, p. 3171 amended Section 3017–3019. Stats.1953, p. 2805 again amended Section 3017.

voided as preferential transfers.[5] It is also clear that the legislature intended this recording statute to accomplish a second purpose; namely, to protect creditors of assignors and subsequent assignees against secret assignments. For, had the legislature merely wished to dispel the cloud cast upon non-notification financing by the Klauder decision, it need only to have provided that assignments became perfected against subsequent assignees when made. And, it need not have provided that recording should be the means of perfecting an assignment of an account against creditors of the assignor. For, theretofore, assignments were perfected against the assignor's creditors when made.

There is then a dual legislative purpose to be considered in resolving the problems of statutory interpretation tendered. The first of these problems arises from the contention of defendant Bank that the receivables assigned to it did not constitute an account within the meaning of Civil Code Section 3019. At the time of the assignment, the term "account" as used in Section 3019 was defined in Section 3017 as follows: " 'Account' means an open book account, mutual account, or account stated, due or to become due, carried in the regular course of business and not represented by a judgment, note, draft, acceptance, or other instrument for the payment of money; it includes rights under an unperformed contract for work, goods or services which in the regular course will result in an open book account."

It would appear that the right assigned to defendant to receive the payments due the bankrupt under the construction contract constitutes an account as described by the last clause of the statutory definition. But, defendant urges that it does not because it is claimed that an express written contract such as that between the bankrupt and the State of California can never result in an open book account except by specific agreement of the parties. In support of this claim, defendant cites numerous cases in which open book accounts were distinguished from other types of indebtedness for the purpose of determining the appropriate statute of limitation.[6] These cases quite reasonably held that a written contract could not ordinarily result in an open book account which could be the basis of an independent cause of action, apart from the contract, so that a suitor might avoid the bar of the statute of limitation applicable to suits on a written contract.

It is not logical to suppose that the legislature intended that open book accounts should be judged by the same standards in determining the applicability of the recording statute as they would be in determining the appropriate statute of limitation. The last clause of Section 3017 obviously contemplates that an open book account may arise in the regular course out of a contract, either oral or written. Indeed, it is likely that that clause was inserted in Section 3017 to make clear that the term "open book account" was not to have the restricted meaning given it in the statute of limitation cases. The holdings in those cases were based upon entirely different considerations of policy than those which entered into the drafting of the recording statute. As has been noted, the recording statute was enacted both to aid and to regulate non-notification financing of accounts receivable. Consequently, it is reasonable to assume the legislature

---

5. For a full discussion of non-notification financing of receivables, the impact of the Klauder decision, and the State legislation enacted to counteract that decision see Koessler, "Assignment of Accounts Receivable," 33 California Law Review 40 (1945). See also the comment on the enactment of the California statute in 17 Southern California Law Review 303 (1944).

6. Parker v. Shell Oil Co., 1946, 29 Cal.2d 503, 175 P.2d 838; Tillson v. Peters, 1940, 41 Cal.App.2d 671, 107 P.2d 434; Lee v. De Forest, 1937, 22 Cal.App.2d 351, 71 P.2d 285; Stewart v. Claudius, 1937, 19 Cal.App.2d 349, 65 P.2d 933; Mercantile Trust Co. of San Francisco v. Doe, 1914, 26 Cal.App. 246, 146 P. 692.

intended the statute to encompass the types of accounts receivable likely to be financed on a non-notification basis.[7] Certainly, the mere fact that rights to receive payment for goods or services might have arisen from a written contract would not mean that the account-debtor would necessarily be notified of their assignment.

In my opinion the term "open book account" was used in the statute in the ordinary business sense of an indebtedness primarily evidenced or reflected by debit and credit entries in an account book. The construction contract between the State of California and the bankrupt normally would have and in fact did result in such an account. The contract provided for payment on a unit basis for the work done and materials furnished by the bankrupt. The bankrupt was entitled to progress payments based upon estimates of completed work made by State engineers. Appropriate entries were made in accounts maintained by the bankrupt, when these estimates were made, and again when payment was made by the State. The amount which had fallen due under the contract could not have been determined from the contract itself. Thus the accounts were more than a mere memorandum of the payments which had been made on an indebtedness fixed by the terms of the contract. They were the primary evidence of the current indebtedness of the State to the bankrupt.

Defendant Bank next contends that even if the receivables assigned to it did fall within the general statutory description of an "account," they were excluded from the statutory definition by the proviso that an "account" should not be represented by "a judgment, note, draft, acceptance, or other instrument for the payment of money". In support of this argument, defendant cites In re Richards, D.C.S.D.Cal.1952, 108 F.Supp. 259, in which the Court held that an account arising out of a written contract was represented by an instrument for the payment of money. I cannot agree with the conclusion reached in that case. In my opinion, the term "other instrument for the payment of money" as used in the statute must be interpreted in the light of the specifically enumerated instruments, "judgment, note, draft, acceptance". A contract does not have the distinctive attributes of such instruments.[8]

Defendant also notes that the statutory definition of "account" was amended in 1953.[9] The amended definition provides that " 'account' does not include * * * any debt arising under a contract for a work of improvement to real property as defined in Section 1182· of the Code of Civil Procedure or a public work of improvement as defined in Section 4200 of the Government Code." The receivables assigned to defendant Bank would thus not be an "account" as presently defined. It is argued that the present definition does not represent a substantive change in the previous definition, but merely a clarification of language. The amendment is far too detailed and extensive to be a mere clarification. Moreover, ample reason existed in 1953 for a substantive change in the definition of "account." A 1950 amendment to Section 60, sub. a of the Bankrupcy Act had eliminated the risk that an assignment might be voided by a trustee in bankruptcy as a preferential transfer merely because it had not been perfected against a subsequent assignee.[10] Thus when the recording stat-

---

7. See the discussion of the purpose of the recording statute in relation to the statutory definition of "account" in Durkin v. Durkin, 1955, 133 Cal.App.2d 283, 284 P.2d 185. In that case the appellate court approved a holding, on facts substantially different from those in the present case, that an assigned account was not an "account" as defined in Civil Code Section 3017.

8. For a comment questioning the holding in In re Richards, see 41 California Law Review 333 (1953).

9. Stats.1953, p. 2805.

10. 64 Stat. 24. See House Report 1293, 81st Cong., 2nd Session, U. S. Code Congressional Service 1950, p. 1985.

ute was amended in 1953 it was no longer needed to enable lenders engaged in non-notification financing to render assignments invulnerable to attack by trustees in bankruptcy. It remained only as a protection for subsequent assignees and the assignor's creditors against secret assignments. The legislature may have felt that this single purpose could be accomplished without requiring recordation of assignments of the types of receivables excluded from the statutory definition of "account" by the 1953 amendment.

Since the receivables assigned to defendant Bank constituted an account within the meaning of former Civil Code Sections 3017 and 3019, the failure to record the assignment rendered it invalid against creditors of the assignor. But, this conclusion is not dispositive of this cause. Defendant Bank contends that even though the assignment itself was not perfected against the assignor's creditors, neither they nor the trustee in bankruptcy can recover payments actually received by the Bank as a consequence of the assignment. Two alternative grounds are asserted in support of this contention. The first is that the payments received by the Bank were not collected directly from the bankrupt and thus were not received by the Bank *under* the assignment.[11] The second is that the recording statute merely prevents an assignee from *asserting* an unrecorded assignment against creditors of the assignor seeking to reach outstanding accounts receivable, and does not entitle creditors to recover from the assignee *actual* collections on assigned accounts.

The first ground has no merit. Without relating all of the facts concerning the receipt of payments by the Bank, it is fair to say that the Bank had control of payments made by the State for work done under the construction contract from the moment the payments were made. Moreover, if the recording statute does permit creditors to recover from an assignee amounts collected as a consequence of unrecorded assignments, it seems clear that the fact that the assignor may have collected from the account-debtor and in turn paid the assignee does not alter the situation. It has been noted that the recording statute is concerned with the financing of accounts receivable on a non-notification basis. And, when this type of financing is engaged in, it is expected that the assignor may collect from the account debtor on behalf of the assignee. It is also apparent from the content of the recording statute that it was designed to encompass this situation. That portion of the statute contained in Civil Code Section 3025 provides, among other things, that the assignor of an account shall be a trustee for the assignee of any proceeds of the account collected by the assignor.[12]

However, in my opinion, defendant Bank is correct in its claim that the recording statute does not enable creditors of the assignor of an unrecorded assignment to recover from the assignee sums actually collected pursuant to the assignment. In support of the contention that the statute does permit such recovery, the Trustee relies principally upon the case of Menick v. Carson, D.C.S.D.Cal. 1951, 96 F.Supp. 817, 819, which so holds.[13] In that case the court pointed out that one of the purposes of the statute is "to prevent secret liens and transfers which deceive a creditor who ex

---

11. It is not disputed, however, that one payment received by the Bank was received directly from the State. This argument, therefore, has no application to that payment.

12. See the comment on Section 3025 in 17 Southern California Law Review 303 at 307 (1944).

13. The Trustee also notes a decision made by Judge Roche of this Court, without opinion, in Costello v. H. B. Paint Co., Civil No. 30569, April 15, 1952. But, that decision, unexplained by any opinion, has no precedential significance here, since in that case the collections on the assigned account were made after the adjudication in bankruptcy. Thus considerations not present in this case may have entered into Judge Roche's decision.

tends or continues credit on the basis of the debtor's financial position." Then the Court stated that "If the debtor secretly assigns his accounts and a creditor extends credit in reliance on the possession of the debtor of the accounts, the creditor has been deluded and may set aside the assignments. To say that the assignee may avoid this result by merely collecting the accounts is to present him with a device which would practically make the statute a nullity."[14]

In my opinion, the Court's conclusion is the result of an insufficient consideration of the practical aspects of the extension of credit in reliance on the debtor's possession of accounts receivable. Accounts receivable are constantly fluctuating assets. Any creditor is aware that an account will not ordinarily remain outstanding indefinitely, but in the normal course of business will be paid. Upon collection of the account, the debtor is free to dispose of the proceeds as he may see fit. When he has done so, his creditors cannot reach the proceeds unless perhaps as a preferential transfer if bankruptcy follows within four months. Credit is rarely extended in reliance on any particular accounts receivable, but rather on the amount of receivables which a business of a particular size and character may be expected to have continually outstanding. All that creditors can reasonably expect is to reach such outstanding accounts in the event of the debtor's insolvency or bankruptcy. The protection they need is against prior secret liens which will prevent them from sharing these assets of the debtor. As interpreted by the Court in Menick, the recording statute would do more than protect against secret assignments. It would place the assignor's creditors in a far more favorable position than if the assignment had never been made. The sums collected by the assignee pursuant to an unrecorded assignment would remain as sort of a perpetual fund on which prior creditors of the assignor could draw in the event of his eventual default on his debts to them. I do not believe the framers of the California recording statute ever intended such a result.

The language of the statute does not require it. At the time of the assignment, Civil Code Section 3019 merely stated that no unrecorded assignment of an account "shall be valid" as against creditors of the assignor or subsequent assignee, without notice. On its face, this language means no more than that an unrecorded transfer of an account is ineffective against such creditors and subsequent assignees. Once the account is paid, however, it is extinguished. The fact that the account, itself, was never effectively transferred as against the assignor's creditors or subsequent assignees does not mean that the proceeds could not be.

It may be said that the recording statute was intended to protect not only the assignor's creditors but also subsequent assignees who can only be adequately protected by enabling them to recover sums collected by a prior assignee who did not record his assignment. This may be true. But, if the recording statute was intended to afford such protection to subsequent assignees, provisions of the statute other than Civil Code 3019 more reasonably spell out that intent. At the time of the assignment herein, Civil Code Section 3018 established the relative priorities of competing assignees, stating that the first in time should take precedence, except that if any of the assignments were recorded, the assignee who first recorded should have priority. It would be a fair interpretation of this provision, to say that an assignee with priority could recover, from another assignee, collections on the assigned account. To so interpret Section 3018 would result in a more logical application of the recording statute than to hold that such recovery would be permissible merely because an assignment was invalid under Section 3019. For if that were true, a subsequent assignee

---

14. 96 F.Supp. 817 at page 819.

who had never troubled to record his own assignment would be able to recover collections on the account made by the prior assignee. There would be no justification for so favoring the second assignee.[15]

Since at the time of the filing of the petition in bankruptcy, the account assigned by the bankrupt to defendant was no longer outstanding, and Civil Code Section 3019 did not entitle the bankrupt's creditors to recover the proceeds from defendant, the Trustee has no cause of action under Section 70, sub. e of the Bankruptcy Act. Judgment will therefore enter in favor of defendant upon findings presented pursuant to the Rules.

15. The California recording statute from the beginning set forth the rights of competing assignees of the same account in a very ambiguous manner. See the comments in 33 Southern California Law Review 303 at 309 (1944) ; 33 California Law Review 308 (1950). Apparently many of the numerous amendments to the statute were made in an attempt to clear up these ambiguities. However, a careful appraisal of these amendments in the light of the purpose of the recording statute makes it clear that the original provision of Section 3019 that an unrecorded assignment is not valid against a subsequent assignee, whatever it meant, certainly did not mean that a junior assignee could recover the proceeds of the account actually collected by a senior assignee who did not record his assignment.